IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT,
IN AND FOR OSCEOLA COUNTY, FLORIDA

WILLIAM T. SMITH, as Personal
Representative of the Estate of
JUSTIN K. SMITH, deceased,

       CASE NO.:

      Plaintiff,

v.

OSCEOLA COUNTY, FLORIDA,
Officer MICHAEL NEGRON, JR., individually,
Officer ARNALDO TORRES-VEGA, individually,
Officer ERICK VEGA, individually, and
Sergeant CHRISTOPHER ROARK, individually,

      Respondents.

_____/

## COMPLAINT

Plaintiff, WILLIAM T. SMITH, as Personal Representative of the Estate of JUSTIN K. SMITH, by and through undersigned counsel, hereby sues Defendants, OSCEOLA COUNTY, FLORIDA, Officer MICHAEL NEGRON, JR., Officer ARNALDO TORRES-VEGA, Officer ERICK VEGA and Sergeant CHRISTOPHER ROARK, and in furtherance thereof, states as follows:

## PARTIES, JURISDICTION AND VENUE

1.      This is a cause of action for damages in an amount which exceeds fifty thousand and no/100 dollars ($50,000.00), exclusive of interest and costs.

2.      This is a wrongful death action pursuant to Florida's Wrongful Death Act, §§ 768, *Florida Statutes et seq.*, and an action for violation of the decedent's rights pursuant to the Eighth and Fourteenth Amendments to the United States Constitution.

1

3. WILLIAM T. SMITH, with a principal address in Lee County, Florida, has been appointed the personal representative of the estate of JUSTIN K. SMITH. *See* Order Appointing Personal Representative attached hereto as Exhibit "A."

4. JUSTIN K. SMITH (deceased) was at all relevant times a resident of Osceola, County, Florida.

5. At the time of his death, JUSTIN K. SMITH was thirty-five (35) years of age and was unmarried.

6. JUSTIN K. SMITH was survived by his MOTHER, SUSAN R. SARGENT and four (4) CHILDREN: E.S. (D.O.B. 10/30/2013), M.S. (D.O.B. 11/15/2014), S.S. (D.O.B. 3/26/2018), and T.S. (D.O.B. 1/23/2019). To protect them as minors, the complete names of the survivors identified herein will be disclosed to the Defendants under separate cover.

7. The Defendant, OSCEOLA COUNTY, FLORIDA (hereinafter "OSCEOLA"), is an entity operating by virtue of the laws of the State of Florida. At all times material hereto, OSCEOLA, maintained, operated and administered a department known as the OSCEOLA COUNTY CORRECTIONS DEPARTMENT (hereinafter referred to as "OCC"), with agents, servants and employees, including, but not limited to Officer MICHAEL NEGRON, JR., Officer ARNALDO TORRES-VEGA, and Sergeant CHRISTOPHER ROARK, acting on behalf of OSCEOLA.

8. Decedent, JUSTIN K. SMITH, was incarcerated at the Osceola County Jail, Osceola County, Kissimmee, Florida, during all times relevant to this proceeding and was in the care, custody and control of the OCC.

9. Defendant, MICHAEL NEGRON, JR., was, at all times material hereto, a corrections officer and an employee of the OCC.

10. Defendant, ARNALDO TORRES-VEGA, was, at all times material hereto, a corrections officer and an employee of the OCC.

11. Defendant, ERICK VEGA, was, at all times material hereto, a corrections officer and an employee of the OCC.

12. Defendant, CHRISTOPHER ROARK, was, at all times material hereto, a sergeant and an employee of the OCC.

13. Venue properly lies in Osceola County, Florida, because the incident giving rise to this cause of action occurred in Osceola County, Florida.

14. All conditions precedent to the filing of this action have either been performed or waived, including, without limitation, notice to Defendant, OSCEOLA and the Florida Department of Financial Services, pursuant to Florida Statute § 768.28, a copy of which is attached hereto as Composite Exhibit 'B' and incorporated herein by reference.

## FACTUAL ALLEGATIONS

15. On October 7, 2022, JUSTIN K. SMITH was booked into the Osceola County Correctional Facility located at 402 Simpson Road, Kissimmee, Osceola County, Florida 34744.

16. At all relevant times, The Osceola County Correctional Facility was maintained, operated and managed by OSCEOLA.

17. At all times material hereto, JUSTIN K. SMITH was a pre-trial detainee awaiting trial at the Osceola County Correctional Facility located at 402 Simpson Road, Kissimmee, Osceola County, Florida 34744.

18. At all relevant times, Decedent, JUSTIN K. SMITH, was a vulnerable inmate in that he was an inmate who was at high risk of physical injury, harm, suicide and/or death due to

3

characteristics related to age, criminal history, pending charges, social history, physical or mental disabilities, mental disease or defect(s), assessments or past history.

19.     Despite being an inmate who was at high risk of physical injury, harm, suicide and/or death, JUSTIN K. SMITH was classified as "Non-acutely suicidal," after his initial health screening on October 7, 2022.

20.     JUSTIN K. SMITH, an inmate who was at high risk of physical injury, harm, suicide and/or death, should have been classified as "acutely suicidal," after his initial health screening on October 7, 2022.

21.     JUSTIN K. SMITH was never given a Classification Risk Assessment.

22.     JUSTIN K. SMITH, an inmate who was at high risk of physical injury, harm, suicide and/or death, was provided with a jail uniform, blanket, and towel.

23.     JUSTIN K. SMITH was provided with a spork, a known dangerous instrument and weapon, by a Trustee.

24.     JUSTIN K. SMITH, an inmate who was at high risk of physical injury, harm, suicide and/or death, should have been housed in a medical or BA pod which provided direct one on one supervision and only a dignity garment.

25.     JUSTIN K. SMITH, an inmate who was at high risk of physical injury, harm, suicide and/or death was approved into the Spillman Jail Management System ("JMS") for general population.

26.     At all relevant times, JUSTIN K. SMITH was in administrative confinement and/or protective custody assigned to a Detox Unit, DB-113, under Detox Protocol.

27.     Under the Detox Protocol, the unit was subject to observations via fixed livestream continuous video monitors, as well as random visual checks to be completed every thirty minutes.

28. The Unit was required to have two corrections officers assigned to observe, monitor and keep the inmates reasonably safe which required Direct Continuous Observation and/or Close Supervision, random security inspections and random visual checks.

29. A visual check is an unobstructed visual observation of an inmate which includes verification of the inmate's chest rising and falling along with a visual of the inmate's skin. Visual checks are required to be completed on an unpredictable and/or irregular schedule. A visual check specifically requires that linen and bedding are not draped from bunks.

30. A security inspection is a thorough inspection of all occupied and unoccupied duty areas assigned to an Officer to identify and/or detect structural, mechanical, or equipment defects, presence of contraband, and/or abnormal inmate activity.

31. At all times material hereto, OSCEOLA did not assign the minimum number of qualified staff personnel to keep the Housing Unit where JUSTIN K. SMITH was housed reasonably safe.

32. At all times material hereto, OSCEOLA did not ensure that observation, random visual checks and/or supervisor inspections of JUSTIN K. SMITH were completed fully and properly.

33. At all times material hereto, OSCEOLA did not ensure that all correctional officers were properly trained, qualified, and/or certified to supervise the Detox Unit.

34. At all times material hereto, OSCEOLA permitted untrained and/or unqualified correctional officers to independently supervise the Detox Unit.

35. At all times material hereto, OSCEOLA did not ensure that all correctional officers were complying with Detox Protocol.

36.     At all times material hereto, OSCEOLA knew of or should have known of the risk of physical injury, harm, suicide and/or death as a known risk of allowing linen or bedding to be draped from bunks.

37.     At all times material hereto, OSCEOLA failed to investigate whether all correctional officers and/or field training officers were qualified, competent, and/ or certified.

38.     At all times material hereto, OSCEOLA did not perform proper visual checks on JUSTIN K. SMITH despite his blanket being in an area which posed a security threat to him and knowing that only his legs could be seen by a visual inspection.

39.     At all times material hereto, OSCEOLA failed to train all correctional officers about the frequency and requirements of performing and completing visual checks pursuant to policies and procedures.

40.     At all times material hereto, OSCEOLA failed to ensure JUSTIN K. SMITH had a Classification Risk Assessment.

41.     At all times material hereto, OSCEOLA failed to ensure JUSTIN K. SMITH was properly classified as "Acutely suicidal."

42.     At all times material hereto, OSCEOLA knew or should have known of the risk of physical injury, harm, suicide and/or death when supervisor inspections and/or visual checks are not completed correctly.

43.     On October 8, 2022, JUSTIN K. SMITH prepared and executed his own death in a cell of the Osceola County Correctional Facility while under the supervision of the OCC.

44.     The OCC and its officers, agents and others acting on its behalf knew or had reason to know that JUSTIN K. SMITH was on the verge of physical injury, harm, suicide and/or death or that physical injury, harm, suicide and/or death was imminent.

45. The excessive risk of harm to JUSTIN K. SMITH was obvious, including the risk of physical self-harm, medical harm, detoxification and/or death.

46. There has been a history of suicides and/or attempted suicides of inmates at the OCC.

47. The OCC knew of the history of suicides and/or attempted suicides of inmates at OCC.

48. Suicide is one of the leading causes of death in United States, resulting in nearly one (1) death every eleven (11) minutes.[1]

49. The number of suicides in state jails and prisons and federal prisons has steadily increased.[2]

50. There are more than four thousand (4,000) deaths by suicide in state and federal prisons and jails a year.

51. As of 2019, Florida has the third highest number of state and federal prisoner deaths by suicide in the country.[3] Suicide continues to be a leading cause of death in jails where the rate of suicide in county jails is generally approximately three times greater than that in the general population.

52. Suicide has consistently been the leading cause of death in local jails. Suffocation, including strangulation, accounts for nearly 90% of deaths in local jails.[4]

53. There were confirmed sixty-one (61) inmate deaths by suicide in the years 2017 to 2020 in all of the Florida Department of Corrections for all facilities across Florida which included

---

[1] FloidaHealthCharts, Deaths from Suicide,
https://www.flhealthcharts.gov/ChartsDashboards/rdPage.aspx?rdReport=Death.Dataviewer&cid=0116.
[2] U.S. Department of Justice, Office of Justice Programs, Bureau of Justice Statistics, *Mortality in State and Federal Prisons*, 2001-2019, Statistical Tables, p. 1 Figure 1.
[3] U.S. Department of Justice, Office of Justice Programs, Bureau of Justice Statistics, *Mortality in State and Federal Prisons*, 2001-2019, Statistical Tables, (p. 24, December 2021).
[4] Id.

inmate daily populations of over 90,000 people.[5] There have been at least twenty (20) suicides or attempted suicides in the Osceola County Jail within the Osceola County Jail in the two (2) years before the death of JUSTIN K. SMITH.

54.     The OCC knew that its jail environment was conducive to suicidal behavior and that inmates are facing a crisis situation.

55.     The OCC knew of and disregarded an excessive risk to inmate health and safety including the risk of inmate suicides and/or the risk of JUSTIN K. SMITH'S suicide.

56.     The OCC was aware of facts from which an inference could be drawn that a substantial risk of serious harm existed to JUSTIN K. SMITH.

57.     At all times relevant, JUSTIN K. SMITH placed his blanket on the top bunk while lying on the bottom bunk, pulling down the blanket before tossing it back on the top bunk multiple times.

58.     At all times material hereto, only JUSTIN K. SMITHS' legs could be seen by visible inspection.

59.     There has been a longstanding, pervasive, well-documented, or expressly noted risk of suicides in jails and prisons and at the Osceola County Jail by officials in the past, the circumstances suggest that OSCEOLA, its supervisors and employees have been exposed to information concerning the risk and thus must have known about the risk, and as such, OSCEOLA, its supervisors and employees had actual knowledge of the risk.

60.     The OCC drew the inference that an excessive risk of serious harm existed to JUSTIN K. SMITH, including but not limited to, recognizing in written policy the substantial risk of serious harm when an inmate drapes a linen or bedding over a bunk, knew the risk of JUSTIN

---

[5] Florida Department of Corrections, Inmate Mortality, http://www.dc.state.fl.us/pub/mortality/index.html.

K. SMITH placing a linen or bedding over his bunk, and disregarded the risk, which caused or substantially contributed to the death of JUSTIN K. SMITH.

61.    At all times relevant hereto, OSCEOLA had a policy in place called Corrections Department Post Order (PO) #400.33 which governed Facility Camera Monitoring Station Operators.

62.    At all times relevant hereto, OSCEOLA had a policy in place called Corrections Department Operational Procedure (OP) #400.12 which governed Security Checks and Visual Inspections.

63.    At all times relevant hereto, OSCEOLA had a policy in place called Corrections Department Operational Procedure (OP) #400.20 which governed procedures of high risk inmates.

64.    At all times relevant hereto, OSCEOLA had a policy in place called Corrections Department Operational Procedure (OP) #300.02 which governed the guidelines of the Field Training Program.

65.    At all times relevant hereto, OSCEOLA had a policy in place called Corrections Department Operational Procedure (OP) #300.04 which governed procedures of training.

66.    At all times relevant hereto, OSCEOLA had a policy in place called Corrections Department Operational Procedure (OP) #600.02 which governed the classifications of inmates.

67.    At all times relevant hereto, OSCEOLA had a policy in place called Corrections Department Operational Procedure (OP) #100.10 which governed Standardized Log Entries.

68.    OSCEOLA failed to review, update, implement or revise its policies regarding supervision of inmates in light of their knowledge of the substantial risk of serious harm, including physical injury, suicide, detoxification, medical harm, self-harm and/or death, such that the death of JUSTIN K. SMITH was substantially certain to occur.

69.     OSCEOLA failed to train its employees and such failure showed a deliberate indifference to the rights of its inmates. In light of the duties assigned to specific officers or employees, including but not limited to Officer MICHAEL NEGRON, JR., Officer ARNALDO TORRES-VEGA, and Sergeant CHRISTOPHER ROARK, the need for more or different training was so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that OSCEOLA can reasonably be said to have been deliberately indifferent to the need.

70.     On October 8, 2022, MICHAEL NEGRON, JR. was assigned to supervise, observe and monitor JUSTIN K. SMITH.

71.     MICHAEL NEGRON, JR. had a duty to monitor JUSTIN K. SMITH, including but not limited to, monitoring when JUSTIN K. SMITH was out of sight and immediately addressing any abnormality or inability to observe JUSTIN K. SMITH.

72.     MICHAEL NEGRON, JR. was a corrections officer assigned to:

a.     Monitor the cell where JUSTIN K. SMITH was housed;

b.     Check all Special Confinement Sheets;

c.     Conduct random security inspections;

d.     Conduct cell searches;

e.     Conduct random visual checks of inmates and document them;

f.     Conduct headcounts;

g.     Maintain proper logs, records and confinement sheets;

h.     Immediately report any observations of concern;

i.     Report all unusual incidents;

j.     Brief any incoming or outgoing shift personnel;

k.     Ensure all camera views are free from obstruction; and/or

l.      Immediately report any abnormality.

73.     MICHAEL NEGRON, JR. knew JUSTIN K. SMITH draped a blanket over his top bunk several times.

74.     MICHAEL NEGRON, JR. knew only JUSTIN K. SMITH'S legs were visible from the camera views.

75.     MICHAEL NEGRON, JR. failed to conduct his duties as above including but not limited to failing to monitor, observe or correct an abnormality and/or inability to observe JUSTIN K. SMITH in violation of OSCEOLA policy and/or with deliberate indifference and/or reckless disregard of his obligation to provide adequate protection and supervision for the physical safety of JUSTIN K. SMITH.

76.     MICHAEL NEGRON, JR. failed to report the abnormality in violation of OSCEOLA policy and/or with deliberate indifference and/or reckless disregard of his obligation to provide adequate protection and supervision for the physical safety of JUSTIN K. SMITH.

77.     MICHAEL NEGRON, JR. knew of a substantial risk of harm to JUSTIN K. SMITH, was aware of facts from which an inference of substantial harm could be drawn, including but not limited to the draping of bedding over JUSTIN K. SMITH'S bunk to obstruct him from view, drew the inference of a substantial risk of harm, and disregarded the substantial risk of harm.

78.     MICHAEL NEGRON, JR. falsified documentation that visual checks or other documentation were conducted and completed in the time leading to the death of JUSTIN K. SMITH.

79.     MICHAEL NEGRON, JR. had not completed required training, and was not qualified to be responsible for the supervision of the inmates in the Detox Unit.

80.     MICHAEL NEGRON, JR. was supervised by ARNALDO TORRES-VEGA who was not certified as a Field Training Officer ("FTO"), and had no training as an FTO, in violation of OP 300.02.

81.     MICHAEL NEGRON, JR. was not approved to supervise the Detox Unit independently.

82.     On OCTOBER 8, 2022, ARNALDO TORRES-VEGA was assigned to supervise, observe and monitor JUSTIN K. SMITH.

83.     ARNALDO TORRES-VEGA had a duty to monitor JUSTIN K. SMITH, including but not limited to, monitoring when JUSTIN K. SMITH was out of sight and immediately addressing any abnormality or inability to observe JUSTIN K. SMITH.

84.     ARNALDO TORRES-VEGA was a corrections officer assigned to:

a.      Monitor the cell where JUSTIN K. SMITH was housed;

b.      Check all Special Confinement Sheets;

c.      Conduct random security inspections;

d.      Conduct cell searches;

e.      Conduct random visual checks of inmates and document them;

f.      Conduct headcounts;

g.      Maintain proper logs, records and confinement sheets;

h.      Immediately report any observations of concern;

i.      Report all unusual incidents;

j.      Brief any incoming or outgoing shift personnel;

k.      Ensure all camera views are free from obstruction;

l.      Immediately report any abnormality; and/or

m.   Supervise inferior correctional officers including, but not limited to MICHAEL NEGRON, JR.

85.   ARNALDO TORRES-VEGA knew JUSTIN K. SMITH draped a blanket over his top bunk several times.

86.   ARNALDO TORRES-VEGA knew only JUSTIN K. SMITH'S legs were visible from the camera views.

87.   ARNALDO TORRES-VEGA failed to conduct his duties as above including but not limited to failing to monitor, observe or correct an abnormality and/or inability to observe JUSTIN K. SMITH in violation of OSCEOLA policy and/or with deliberate indifference and/or reckless disregard of his obligation to provide adequate protection and supervision for the physical safety of JUSTIN K. SMITH.

88.   ARNALDO TORRES-VEGA failed to report the abnormality in violation of OSCEOLA policy and/or with deliberate indifference and/or reckless disregard of his obligation to provide adequate protection and supervision for the physical safety of JUSTIN K. SMITH.

89.   ARNALDO TORRES-VEGA knew of a substantial risk of harm to JUSTIN K. SMITH, was aware of facts from which an inference of substantial harm could be drawn, including but not limited to the draping of bedding over JUSTIN K. SMITH'S bunk to obstruct him from view, drew the inference of a substantial risk of harm, and disregarded the substantial risk of harm.

90.   ARNALDO TORRES-VEGA falsified documentation that visual checks or other documentation were conducted and completed in the time leading to the death of JUSTIN K. SMITH.

91.   ARNALDO TORRES-VEGA was acting as MICHAEL NEGRON'S Field Training Officer.

92.     ARNALDO TORRES-VEGA was either not certified, did not have any and/or sufficient FTO training, and was in violation of OP 300.02.

93.     ARNALDO TORRES-VEGA failed to ensure MICHAEL NEGRON read and understood all Operational Procedures and Post Orders.

94.     ARNALDO TORRES-VEGA failed to report any problems with the program and/or MICHAEL NEGRON'S progress through the Field Training Coordinator.

95.     ARNALDO TORRES-VEGA left MICHAEL NEGRON JR. in the Detox Unit without supervision.

96.     On October 8, 2022, ERICK VEGA was assigned to supervise, observe and monitor JUSTIN K. SMITH.

97.     ERICK VEGA had a duty to monitor JUSTIN K. SMITH, including but not limited to, monitoring when JUSTIN K. SMITH was out of sight and immediately addressing any abnormality or inability to observe JUSTIN K. SMITH.

98.     ERICK VEGA was a corrections officer assigned to:

m.      Monitor the cell where JUSTIN K. SMITH was housed;

n.      Check all Special Confinement Sheets;

o.      Conduct random security inspections;

p.      Conduct cell searches;

q.      Conduct random visual checks of inmates and document them;

r.      Conduct headcounts;

s.      Maintain proper logs, records and confinement sheets;

t.      Immediately report any observations of concern;

u.      Report all unusual incidents;

v.      Brief any incoming or outgoing shift personnel;

w.      Ensure all camera views are free from obstruction; and/or

x.      Immediately report any abnormality.

99.     ERICK VEGA knew or should have known that JUSTIN K. SMITH draped a blanket over his top bunk several times.

100.    ERICK VEGA knew or should have known only JUSTIN K. SMITH'S legs were visible from the camera views.

101.    ERICK VEGA failed to conduct his duties as above including but not limited to failing to monitor, observe or correct an abnormality and/or inability to observe JUSTIN K. SMITH in violation of OSCEOLA policy and/or with deliberate indifference and/or reckless disregard of his obligation to provide adequate protection and supervision for the physical safety of JUSTIN K. SMITH.

102.    ERICK VEGA failed to report the abnormality in violation of OSCEOLA policy and/or with deliberate indifference and/or reckless disregard of his obligation to provide adequate protection and supervision for the physical safety of JUSTIN K. SMITH.

103.    ERICK VEGA knew of a substantial risk of harm to JUSTIN K. SMITH, was aware of facts from which an inference of substantial harm could be drawn, including but not limited to the draping of bedding over JUSTIN K. SMITH'S bunk to obstruct him from view, drew the inference of a substantial risk of harm, and disregarded the substantial risk of harm.

104.    On OCTOBER 8, 2022, CHRISTOPHER ROARK was assigned to supervise, observe and monitor employees, including but not limited to corrections officers and civilian employees of the OCC that had a duty to supervise, observe and monitor JUSTIN K. SMITH.

105. On OCTOBER 8, 2022, CHRISTOPHER ROARK was assigned to supervise the other individual Defendants and conduct security inspections including security inspections in the housing area where JUSTIN K. SMITH was housed. His duties also included:

  a.  Monitoring the cell where JUSTIN K. SMITH was housed;

  b.  Checking all Special Confinement Sheets;

  c.  Conducting random security inspections;

  d.  Conducting cell searches;

  e.  Checking all documentation of visual checks of inmates;

  f.  Maintaining proper logs, records and confinement sheets;

  g.  Immediately reporting and correcting any observations of concern;

  h.  Reporting and correcting all unusual incidents;

  i.  Ensuring that all incoming or outgoing shift personnel are briefed;

  j.  Ensuring all camera views are free from obstruction;

  k.  Immediately reporting and correcting any abnormality;

  l.  Assigning staff and/or ensuring adequate staff are assigned;

  m.  Discipline of staff under his supervision; and/or

  n.  Ensuring compliance and enforcing any and all policies for supervision of inmates.

106. CHRISTOPHER ROARK had a duty to monitor employees including but not limited to Officer MICHAEL NEGRON, JR., Officer ARNALDO TORRES-VEGA, Officer ERICKVEGA, as well as a duty to monitor JUSTIN K. SMITH, including but not limited to, monitoring when JUSTIN K. SMITH was out of sight and immediately addressing any abnormality or inability to observe JUSTIN K. SMITH.

16

107. CHRISTOPHER ROAK failed to investigate the training, qualifications and certifications of MICHAEL NEGRON, JR., ARNALDO TORRES-VEGA and/or ERICK VEGA.

108. CHRISTOPHER ROARK failed to monitor employees including but not limited to MICHAEL NEGRON, JR., Officer ARNALDO TORRES-VEGA, and/or ERICK VEGA and failed to monitor, observe or correct an abnormality and/or inability to observe JUSTIN K. SMITH in violation of OSCEOLA policy and/or with deliberate indifference and/or reckless disregard of his obligation to provide adequate protection and supervision for the physical safety of JUSTIN K. SMITH.

109. CHRISTOPHER ROARK failed to report the abnormality in violation of OSCEOLA policy and/or with deliberate indifference and/or reckless disregard of his obligation to provide adequate protection and supervision for the physical safety of JUSTIN K. SMITH.

110. PLAINTIFF has retained the undersigned attorney and agreed to pay a reasonable fee thereto.

## COUNT I
## WRONGFUL DEATH AGAINST OSCEOLA COUNTY, FLORIDA

PLAINTIFF realleges and incorporates by reference all allegations set forth in paragraphs one (1) through one-hundred ten (110) above.

111. At all times material, OSCEOLA, on its own, or through its agents, employees, or apparent agents, including but not limited to Officer MICHAEL NEGRON, JR., Officer ARNALDO TORRES-VEGA, Officer ERICK VEGA and Sergeant CHRISTOPHER ROARK owed a duty of care to JUSTIN K. SMITH to use reasonable care to insure his safety.

112. Defendant, OSCEOLA, on its own, or through its agents, employees, or apparent agents, including but not limited to Officer MICHAEL NEGRON, JR., Officer ARNALDO TORRES-VEGA, Officer ERICK VEGA and Sergeant CHRISTOPHER ROARK had a duty to

provide a reasonably safe premise for inmates, including, but not limited to the Decedent, JUSTIN K. SMITH.

113.    Defendant, OSCEOLA, on its own, or through its agents, employees, or apparent agents, including but not limited to Officer MICHAEL NEGRON, JR., Officer ARNALDO TORRES-VEGA, Officer ERICK VEGA and Sergeant CHRISTOPHER ROARK, undertook and assumed the obligation and the duty to supervise inmates, including vulnerable inmates, including but not limited to JUSTIN K. SMITH.

114.    Defendant, OSCEOLA, on its own, or through its agents, employees, or apparent agents, including but not limited to Officer MICHAEL NEGRON, JR., Officer ARNALDO TORRES-VEGA, Officer ERICK VEGA and Sergeant CHRISTOPHER ROARK, and Corporal CHRISTOPHER ROARK, had a duty to protect inmates from physical injury, harm, detoxification, suicide and/or death.

115.    At all times material, OSCEOLA, on its own, or through its agents, employees, or apparent agents, including but not limited to Officer MICHAEL NEGRON, JR., Officer ARNALDO TORRES-VEGA, Officer ERICK VEGA and Sergeant CHRISTOPHER ROARK, owed a duty of care to JUSTIN K. SMITH to use reasonable care to design, maintain and control access to its equipment and/or items, including but not limited to bedding, used within and outside the holding cell and ensure that all are provided, if appropriate, and used in a reasonably safe condition.

116.    At all times material, OSCEOLA, on its own, or through its agents, employees, or apparent agents, including but not limited to Sergeant CHRISTOPHER ROARK, and/or Officer ARNALDO TORRES-VEGA owed a duty of care to JUSTIN K. SMITH to use reasonable care

to hire, retain, and/or supervise experienced and qualified Corrections Officers and personnel to monitor and supervise persons in its care, custody and control.

117. At all times material, Officer MICHAEL NEGRON, JR., Officer ARNALDO TORRES-VEGA, Officer ERICK VEGA and Sergeant CHRISTOPHER ROARK, were acting within the course and scope of their employment.

118. At the time of the incident described above, OSCEOLA, on its own, or through its agents, employees, or apparent agents, including but not limited to Officer MICHAEL NEGRON, JR., Officer ARNALDO TORRES-VEGA, Officer ERICK VEGA and Sergeant CHRISTOPHER ROARK, breached its duties of care owed to JUSTIN K. SMITH.

119. OSCEOLA, on its own, or through its agents, employees, or apparent agents, including but not limited to Officer MICHAEL NEGRON, JR., Officer ARNALDO TORRES-VEGA, Officer ERICK VEGA and Sergeant CHRISTOPHER ROARK, breached its duties to provide a reasonably safe premise and/or protect inmates by:

a. Failing to appropriately monitor JUSTIN K. SMITH;

b. Failing to appropriately classify JUSTIN K. SMITH;

c. Failing to adequately supervise JUSTIN K. SMITH;

d. Failing to provide adequate and reasonable physical security;

e. Failing to hire and retain appropriately trained corrections officers;

f. Failing to monitor inmates including JUSTIN K. SMITH;

g. Failing to properly evaluate the risk of physical injury, harm, detoxification, suicide and/or death of inmates including JUSTIN K. SMITH;

h. Failing to protect JUSTIN K. SMITH from his known desire to commit suicide;

i.      Failing to appropriately design and/or maintain the cell and the equipment within and outside the cell used to house JUSTIN K. SMITH;

j.      Failing to house JUSTIN K. SMITH in a cell free of known hazardous conditions conducive to physical injury, harm, suicide and/or death, including items that could be used to hang himself;

k.      Failing to adopt a written policy, procedure, practice, administrative, general or special order wherein staff is required to adequately supervise inmates at risk of physical injury, harm, suicide and/or death in order to provide a reasonably safe environment;

l.      Adopting policies or practices which cause or contribute to a failure to adequately supervise inmates at risk of physical injury, harm, suicide and/or death in order to provide a reasonably safe environment;

m.      Failing to develop and employ reporting procedures to address supervision inadequacies;

n.      Failing to employ, develop, and update post orders for corrections officers;

o.      Failing to follow its own policies or procedures, such that such failure has become a practice at the Osceola County Jail;

p.      Failing to discipline employees, including but not limited to the named individual defendants, such that the risk of harm is substantially certain to occur;

q.      Failing to discipline employees, including but not limited to the named individual defendants, such that the failure to discipline for breach of policy has become a practice at the Osceola County Jail;

r.      Failing to discipline employees, including but not limited to the named individual defendants, such that the failure demonstrates that OSCEOLA COUNTY has ratified, endorsed, and/or consented to the practice for which employees should be disciplined; and/or

s.      Failing to provide a reasonably safe premise in other ways which may be determined through discovery.

120.    Defendant, OSCEOLA is liable for acts, events and/or omissions by any person or entity under Defendant's control, direct or indirect, including its employees, agents, corrections officers, consultants and independent contractors, whether in-house or outside entities, individuals, agencies or pools, pursuant to Section 768.28(9)(a), *Florida Statutes* while such persons are acting within the scope of employment.

121.    The duties alleged in the immediately preceding paragraphs include but are not limited to the duties to provide proper supervision; proper hiring; appropriate background and referral checks; and proper retaining and dismissal of employees, agents, consultants and independent contractors.

122.    As a direct a proximate result of OSCEOLA's negligence, JUSTIN K. SMITH died.

123.    As a direct and proximate result of OSCEOLA's negligence, the estate of JUSTIN K. SMITH, is authorized by Florida's Wrongful Death Act, *Florida Statutes* §§ 768 *et seq.*, and hereby demands recovery of damages including any and all incurred medical expenses, funeral and burial expenses.

124.    As a further proximate result of OSCEOLA's negligence, the survivor(s) have endured past pain and suffering and will continue to endure pain and suffering in the future. Pursuant to Florida's Wrongful Death Act, *Florida Statutes* §§ 768 *et seq.*, the PLAINTIFF hereby

demands recovery of all authorized damages for the survivors and the estate, including but not limited to:

a) For the Estate, loss of earning of the deceased from the date of injury to the date of death, less lost support of survivors excluding contributions in kind, with interest;

b) For the Estate, loss of prospective net accumulations which might reasonably have been expected but for the wrongful death, reduced to present money value;

c) For the Estate, any medical or funeral expenses that have become a charge against the Estate or paid by or on behalf of the deceased;

d) For the Decedent's survivors, the value of lost support and services from the date of death, with interest;

e) For the Decedent's survivors, future loss of support and services from the date of death and reduced to present value;

f) For the Decedent's survivors, children of the Decedent, lost parental companionship, instruction, and guidance; and

g) For the Decedent's survivors, children of the Decedent, compensation for mental pain and suffering.

**WHEREFORE**, PLAINTIFF demands judgment against OSCEOLA for the damages outlined above, with costs, and any further relief as the Court deems proper. The PLAINTIFF demands trial by a jury in the above titled action.

### COUNT II
### DEPRIVATION OF RIGHTS PURSUANT TO
### 42 U.S.C. § 1983 AGAINST DEFENDANT, MICHAEL NEGRON, JR.

Plaintiff realleges and incorporates by reference all allegations contained in paragraphs one (1) through one-hundred ten (110) above, as if fully set forth herein.

125.     This is an action for violation of Constitutional rights pursuant to 42 U.S.C. § 1983, against Defendant, MICHAEL NEGRON, JR., in his individual capacity.

126.     Defendant, MICHAEL NEGRON, JR. is sued in his individual capacity wherein at all times material hereto he was acting with deliberate indifference to the rights and safety of others, including JUSTIN K. SMITH, and was responsible for providing competent and prompt response to the safety and wellbeing of the inmates at the Osceola County Jail, supervision of inmates, identifying the risks of physical injury, harm, suicide and/or death, timely checking the status of inmates and protecting the Decedent from harm.

127.     Defendant, MICHAEL NEGRON, JR., while acting under color of state law and by virtue of the authority vested in him by OSCEOLA, the State or its agencies, had actual and/or constructive notice that JUSTIN K. SMITH was on the verge of physical injury, harm, suicide and/or death or that physical injury, harm, suicide and/or death was imminent and/or the behavior of JUSTIN K. SMITH, should have placed Defendant on notice of this danger.

128.     Defendant, MICHAEL NEGRON, JR. deliberately disobeyed policies and/or orders to maintain an appropriate watch over JUSTIN K. SMITH and therefore, deliberately failed to provide proper supervision.

129.     JUSTIN K. SMITH'S death was the reasonably foreseeable result and a consequence of Defendant's deliberate indifference and reckless disregard of his obligation to provide adequate protection and supervision for the physical safety of JUSTIN K. SMITH by failing to supervise inmates and by falsifying time records.

130.     Defendant, MICHAEL NEGRON, JR., while acting under color of state law and by virtue of the authority vested in him by OSCEOLA, the State or its agencies, acted in bad faith,

with malicious purpose, in a manner exhibiting willful and wanton disregard of human rights and safety.

131.    Defendant, MICHAEL NEGRON, JR. demonstrated reckless and/or deliberate indifference to JUSTIN K. SMITH'S fundamental and clearly established Constitutional rights and evidenced an intentional and conscious disregard and indifference to JUSTIN K. SMITH'S safety and welfare in his action(s) as:

a.    Defendant, MICHAEL NEGRON, JR. violated JUSTIN K. SMITH'S constitutional rights by failing to take precautions or conduct the supervision necessary in the exercise of reasonable care to prevent injury to JUSTIN K. SMITH;

b.    Defendant, MICHAEL NEGRON, JR. violated JUSTIN K. SMITH'S constitutional rights by failing to properly monitor and screen the activities in the cell;

c.    Defendant, MICHAEL NEGRON, JR. violated JUSTIN K. SMITH'S constitutional rights by falsifying supervision time records;

d.    Defendant, MICHAEL NEGRON, JR.'s failure to protect JUSTIN K. SMITH was so grossly incompetent and inadequate as to shock the conscience or to be intolerable to fundamental fairness; and/or

e.    Defendant, MICHAEL NEGRON, JR. failed to act in the face of an unjustifiably high risk of physical injury, harm, suicide and/or death that was either known or so obvious that it should be known to him.

132.    Defendant, MICHAEL NEGRON JR. knew of and disregarded an excessive risk to JUSTIN K. SMITH'S health or safety; MICHAEL NEGRON, JR. was both aware of facts from

which there was an inference of an excessive risk to JUSTIN K. SMITH'S health or safety, and he also drew the inference.

133.    Defendant, MICHAEL NEGRON, JR. through his actions or inaction described above, caused JUSTIN K. SMITH to be subjected to the deprivation of rights, privileges, and immunities secured by the Constitution and the laws of the United States, including:

a.    The right to substantive and procedural due process protected by the Fourteenth Amendment.

b.    The right not to be subjected to cruel, unusual and excessive punishment as guaranteed to prisoners by the Eighth Amendment.

c.    The right not to be subjected to cruel, unusual and excessive punishment as guaranteed to pre-trial detainees by the Fourteenth Amendment.

d.    The right to personal safety and wellbeing and protection from physical injury as guaranteed to prisoners by the Eighth Amendment.

e.    The right to personal safety and wellbeing and protection from physical injury as guaranteed to pre-trial detainees by the Fourteenth Amendment.

134.    Defendant, MICHAEL NEGRON, JR. knew that inmates, including but not limited to JUSTIN K. SMITH, faced a substantial risk of serious physical injury, harm, suicide and/or death and disregarded that risk by failing to take reasonable measures to abate it.

135.    As a direct, proximate and foreseeable result of the Constitutional violations and misconduct of the Defendant, MICHAEL NEGRON, JR., as set forth above, JUSTIN K. SMITH died.

136.    As a direct, proximate and foreseeable result of the Constitutional violations and misconduct of the Defendant, MICHAEL NEGRON, JR, the PLAINTIFF hereby demands

recovery of all authorized damages for the survivors and the estate, including but not limited to pain and suffering of the Decedent until his death, loss of enjoyment of life of the Decedent until his death, punitive damages, and:

a) For the Estate, loss of earning of the deceased from the date of injury to the date of death, less lost support of survivors excluding contributions in kind, with interest;

b) For the Estate, loss of prospective net accumulations which might reasonably have been expected but for the wrongful death, reduced to present money value;

c) For the Estate, any medical or funeral expenses that have become a charge against the Estate or paid by or on behalf of the deceased;

d) For the Decedent's survivors, the value of lost support and services from the date of death, with interest;

e) For the Decedent's survivors, future loss of support and services from the date of death and reduced to present value;

f) For the Decedent's survivors, children of the Decedent, lost parental companionship, instruction, and guidance; and

g) For the Decedent's survivors, children of the Decedent, compensation for mental pain and suffering; and

**WHEREFORE**, Plaintiff demands judgment against MICHAEL NEGRON, JR. for the damages outlined above, attorney's fees pursuant to 42 U.S.C. § 1988 and such other and further relief as this Court deems just and proper and demands a trial by jury of all claims.

## COUNT III
## DEPRIVATION OF RIGHTS PURSUANT TO
## 42 U.S.C. § 1983 AGAINST DEFENDANT ARNALDO TORRES-VARGAS

Plaintiff realleges and incorporates by reference all allegations contained in paragraphs one (1) through one-hundred ten (110) above, as if fully set forth herein.

137.    This is an action for violation of Constitutional rights pursuant to 42 U.S.C. § 1983, against Defendant, ARNALDO TORRES-VARGAS, in his individual capacity.

138.    Defendant, ARNALDO TORRES-VARGAS is sued in his individual capacity wherein at all times material hereto he was acting with deliberate indifference to the rights and safety of others, including JUSTIN K. SMITH, and was responsible for providing competent and prompt response to the safety and wellbeing of the inmates at the Osceola County Jail, supervision of inmates, identifying the risks of physical injury, harm, suicide and/or death, timely checking the status of inmates and protecting the Decedent from harm.

139.    Defendant, ARNALDO TORRES-VARGAS, while acting under color of state law and by virtue of the authority vested in him by OSCEOLA, the State or its agencies, had actual and/or constructive notice that JUSTIN K. SMITH was on the verge of physical injury, harm, suicide and/or death or that physical injury, harm, suicide and/or death was imminent and/or the behavior of JUSTIN K. SMITH, should have placed Defendant on notice of this danger.

140.    Defendant, ARNALDO TORRES-VARGAS deliberately disobeyed policies and/or orders to maintain an appropriate watch over JUSTIN K. SMITH and therefore, deliberately failed to provide proper supervision.

141.    JUSTIN K. SMITH'S death was the reasonably foreseeable result and a consequence of Defendant's deliberate indifference and reckless disregard of his obligation to

provide adequate protection and supervision for the physical safety of JUSTIN K. SMITH by failing to supervise inmates and by falsifying time records.

142. Defendant, ARNALDO TORRES-VARGAS, while acting under color of state law and by virtue of the authority vested in him by OSCEOLA, the State or its agencies, acted in bad faith, with malicious purpose, in a manner exhibiting willful and wanton disregard of human rights and safety.

143. Defendant, ARNALDO TORRES-VARGAS demonstrated reckless and/or deliberate indifference to JUSTIN K. SMITH'S fundamental and clearly established Constitutional rights and evidenced an intentional and conscious disregard and indifference to JUSTIN K. SMITH'S safety and welfare in his action(s) as:

a. Defendant, ARNALDO TORRES-VARGAS violated JUSTIN K. SMITH'S constitutional rights by failing to take precautions or conduct the supervision necessary in the exercise of reasonable care to prevent injury to JUSTIN K. SMITH;

b. Defendant, ARNALDO TORRES-VARGAS violated JUSTIN K. SMITH'S constitutional rights by failing to properly monitor and screen the activities in the cell;

c. Defendant, ARNALDO TORRES-VARGAS violated JUSTIN K. SMITH'S constitutional rights by falsifying supervision time records;

d. Defendant, ARNALDO TORRES-VARGAS's failure to protect JUSTIN K. SMITH was so grossly incompetent and inadequate as to shock the conscience or to be intolerable to fundamental fairness; and/or

e.     Defendant, ARNALDO TORRES-VARGAS failed to act in the face of an unjustifiably high risk of physical injury, harm, suicide and/or death that was either known or so obvious that it should be known to him.

144.    Defendant, ARNALDO TORRES-VARGAS knew of and disregarded an excessive risk to JUSTIN K. SMITH'S health or safety; ARNALDO TORRES-VARGAS was both aware of facts from which there was an inference of an excessive risk to JUSTIN K. SMITH'S health or safety, and he also drew the inference.

145.    Defendant, ARNALDO TORRES-VARGAS through his actions or inaction described above, caused JUSTIN K. SMITH to be subjected to the deprivation of rights, privileges, and immunities secured by the Constitution and the laws of the United States, including:

a.    The right to substantive and procedural due process protected by the Fourteenth Amendment.

b.    The right not to be subjected to cruel, unusual and excessive punishment as guaranteed to prisoners by the Eighth Amendment.

c.    The right not to be subjected to cruel, unusual and excessive punishment as guaranteed to pre-trial detainees by the Fourteenth Amendment.

d.    The right to personal safety and wellbeing and protection from physical injury as guaranteed to prisoners by the Eighth Amendment.

e.    The right to personal safety and wellbeing and protection from physical injury as guaranteed to pre-trial detainees by the Fourteenth Amendment.

146.    Defendant, ARNALDO TORRES-VARGAS knew that inmates, including but not limited to JUSTIN K. SMITH, faced a substantial risk of serious physical injury, harm, suicide and/or death and disregarded that risk by failing to take reasonable measures to abate it.

147.    As a direct, proximate and foreseeable result of the Constitutional violations of the Defendant, ARNALDO TORRES-VARGAS, as set forth above, JUSTIN K. SMITH died.

148.    As a direct, proximate and foreseeable result of the Constitutional violations and misconduct of the Defendant, ARNALDO TORRES-VARGAS, the PLAINTIFF hereby demands recovery of all authorized damages for the survivors and the estate, including but not limited to pain and suffering of the Decedent until his death, loss of enjoyment of life of the Decedent until his death, punitive damages, and:

a)    For the Estate, loss of earning of the deceased from the date of injury to the date of death, less lost support of survivors excluding contributions in kind, with interest;

b)    For the Estate, loss of prospective net accumulations which might reasonably have been expected but for the wrongful death, reduced to present money value;

c)    For the Estate, any medical or funeral expenses that have become a charge against the Estate or paid by or on behalf of the deceased;

d)    For the Decedent's survivors, the value of lost support and services from the date of death, with interest;

e)    For the Decedent's survivors, future loss of support and services from the date of death and reduced to present value;

f)    For the Decedent's survivors, children of the Decedent, lost parental companionship, instruction, and guidance; and

g)    For the Decedent's survivors, children of the Decedent, compensation for mental pain and suffering.

WHEREFORE, Plaintiff demands judgment against ARNALDO TORRES-VARGAS for the damages outlined above, attorney's fees pursuant to 42 U.S.C. § 1988 and such other and further relief as this Court deems just and proper and demands a trial by jury of all claims.

## COUNT IV
## DEPRIVATION OF RIGHTS PURSUANT TO
## 42 U.S.C. § 1983 AGAINST DEFENDANT ERICK VEGA

Plaintiff realleges and incorporates by reference all allegations contained in paragraphs one (1) through one-hundred ten (110) above, as if fully set forth herein.

149.    This is an action for violation of Constitutional rights pursuant to 42 U.S.C. § 1983, against Defendant, ERICK VEGA, in his individual capacity.

150.    Defendant, ERICK VEGA is sued in his individual capacity wherein at all times material hereto he was acting with deliberate indifference to the rights and safety of others, including JUSTIN K. SMITH, and was responsible for providing competent and prompt response to the safety and wellbeing of the inmates at the Osceola County Jail, supervision of inmates, identifying the risks of physical injury, harm, suicide and/or death, timely checking the status of inmates and protecting the Decedent from harm.

151.    Defendant, ERICK VEGA, while acting under color of state law and by virtue of the authority vested in him by OSCEOLA, the State or its agencies, had actual and/or constructive notice that JUSTIN K. SMITH was on the verge of physical injury, harm, suicide and/or death or that physical injury, harm, suicide and/or death was imminent and/or the behavior of JUSTIN K. SMITH, should have placed Defendant on notice of this danger.

152.    Defendant, ERICK VEGA deliberately disobeyed policies and/or orders to maintain an appropriate watch over JUSTIN K. SMITH and therefore, deliberately failed to provide proper supervision.

153. JUSTIN K. SMITH'S death was the reasonably foreseeable result and a consequence of Defendant's deliberate indifference and reckless disregard of his obligation to provide adequate protection and supervision for the physical safety of JUSTIN K. SMITH by failing to supervise inmates and by falsifying time records.

154. Defendant, ERICK VEGA, while acting under color of state law and by virtue of the authority vested in him by OSCEOLA, the State or its agencies, acted in bad faith, with malicious purpose, in a manner exhibiting willful and wanton disregard of human rights and safety.

155. Defendant, ERICK VEGA demonstrated reckless and/or deliberate indifference to JUSTIN K. SMITH'S fundamental and clearly established Constitutional rights and evidenced an intentional and conscious disregard and indifference to JUSTIN K. SMITH'S safety and welfare in his action(s) as:

    a.    Defendant, ERICK VEGA violated JUSTIN K. SMITH'S constitutional rights by failing to take precautions or conduct the supervision necessary in the exercise of reasonable care to prevent injury to JUSTIN K. SMITH;

    b.    Defendant, ERICK VEGA violated JUSTIN K. SMITH'S constitutional rights by failing to properly monitor and screen the activities in the cell;

    c.    Defendant, ERICK VEGA violated JUSTIN K. SMITH'S constitutional rights by falsifying supervision time records;

    d.    Defendant, ERICK VEGA's failure to protect JUSTIN K. SMITH was so grossly incompetent and inadequate as to shock the conscience or to be intolerable to fundamental fairness; and/or

e.     Defendant, ERICK VEGA failed to act in the face of an unjustifiably high risk of physical injury, harm, suicide and/or death that was either known or so obvious that it should be known to him.

156.    Defendant, ERICK VEGA knew of and disregarded an excessive risk to JUSTIN K. SMITH'S health or safety; ERICK VEGA was both aware of facts from which there was an inference of an excessive risk to JUSTIN K. SMITH'S health or safety, and he also drew the inference.

157.    Defendant, ERICK VEGA through his actions or inaction described above, caused JUSTIN K. SMITH to be subjected to the deprivation of rights, privileges, and immunities secured by the Constitution and the laws of the United States, including:

a.    The right to substantive and procedural due process protected by the Fourteenth Amendment.

b.    The right not to be subjected to cruel, unusual and excessive punishment as guaranteed to prisoners by the Eighth Amendment.

c.    The right not to be subjected to cruel, unusual and excessive punishment as guaranteed to pre-trial detainees by the Fourteenth Amendment.

d.    The right to personal safety and wellbeing and protection from physical injury as guaranteed to prisoners by the Eighth Amendment.

e.    The right to personal safety and wellbeing and protection from physical injury as guaranteed to pre-trial detainees by the Fourteenth Amendment.

158.    Defendant, ERICK VEGA knew that inmates, including but not limited to JUSTIN K. SMITH, faced a substantial risk of serious physical injury, harm, suicide and/or death and disregarded that risk by failing to take reasonable measures to abate it.

159. As a direct, proximate and foreseeable result of the Constitutional violations of the Defendant, ERICK VEGA, as set forth above, JUSTIN K. SMITH died.

160. As a direct, proximate and foreseeable result of the Constitutional violations and misconduct of the Defendant, ERICK VEGA, the PLAINTIFF hereby demands recovery of all authorized damages for the survivors and the estate, including but not limited to pain and suffering of the Decedent until his death, loss of enjoyment of life of the Decedent until his death, punitive damages, and:

a) For the Estate, loss of earning of the deceased from the date of injury to the date of death, less lost support of survivors excluding contributions in kind, with interest;

b) For the Estate, loss of prospective net accumulations which might reasonably have been expected but for the wrongful death, reduced to present money value;

c) For the Estate, any medical or funeral expenses that have become a charge against the Estate or paid by or on behalf of the deceased;

d) For the Decedent's survivors, the value of lost support and services from the date of death, with interest;

e) For the Decedent's survivors, future loss of support and services from the date of death and reduced to present value;

f) For the Decedent's survivors, children of the Decedent, lost parental companionship, instruction, and guidance; and

g) For the Decedent's survivors, children of the Decedent, compensation for mental pain and suffering.

**WHEREFORE**, Plaintiff demands judgment against ERICK VEGA for the damages outlined above, attorney's fees pursuant to 42 U.S.C. § 1988 and such other and further relief as this Court deems just and proper and demands a trial by jury of all claims.

**COUNT V**
**DEPRIVATION OF RIGHTS PURSUANT TO**
**42 U.S.C. § 1983 AGAINST DEFENDANT, CHRISTOPHER ROARK**

Plaintiff realleges and incorporates by reference all allegations contained in paragraphs one (1) through one-hundred ten (110) above, as if fully set forth herein.

161.    This is an action for violation of Constitutional rights pursuant to 42 U.S.C. § 1983, against Defendant, CHRISTOPHER ROARK, in his individual capacity.

162.    Defendant, CHRISTOPHER ROARK is sued in his individual capacity wherein at all times material hereto he was acting with deliberate indifference to the rights and safety of others, including JUSTIN K. SMITH, and was responsible for providing competent and prompt response to the safety and wellbeing of the inmates at the Osceola County Jail, supervision of inmates, supervising employees, staff, corrections officers and/or others, identifying the risks of physical injury, harm, suicide and/or death, timely checking the status of inmates and protecting the Decedent from harm.

163.    Defendant, CHRISTOPHER ROARK, while acting under color of state law and by virtue of the authority vested in him by OSCEOLA, the State or its agencies, had actual and/or constructive notice that JUSTIN K. SMITH was on the verge of physical injury, harm, suicide and/or death or that physical injury, harm, suicide and/or death was imminent and/or the behavior of JUSTIN K. SMITH, should have placed Defendant on notice of this danger.

164.    Defendant, CHRISTOPHER ROARK deliberately disobeyed policies and/or orders to maintain an appropriate watch over JUSTIN K. SMITH and/or ensure and supervise

employees required to maintain an appropriate watch and therefore, deliberately failed to provide proper supervision.

165. JUSTIN K. SMITH's death was the reasonably foreseeable result and a consequence of Defendant's deliberate indifference and reckless disregard of his obligation to provide adequate protection and supervision for the physical safety of JUSTIN K. SMITH by failing to supervise inmates, personnel, employees and corrections officers.

166. Defendant, CHRISTOPHER ROARK, while acting under color of state law and by virtue of the authority vested in him by OSCEOLA, the State or its agencies, acted in bad faith, with malicious purpose, in a manner exhibiting willful and wanton disregard of human rights and safety.

167. Defendant, CHRISTOPHER ROARK demonstrated reckless and/or deliberate indifference to JUSTIN K. SMITH'S fundamental and clearly established Constitutional rights and evidenced an intentional and conscious disregard and indifference to JUSTIN K. SMITH'S safety and welfare in his action(s) as:

a. Defendant, CHRISTOPHER ROARK violated JUSTIN K. SMITH'S constitutional rights by failing to take precautions or conduct the supervision necessary in the exercise of reasonable care to prevent injury to JUSTIN K. SMITH;

b. Defendant, CHRISTOPHER ROARK violated JUSTIN K. SMITH'S constitutional rights by failing to properly monitor and screen the activities in the cell;

c. Defendant, CHRISTOPHER ROAR violated JUSTIN K. SMITH'S constitutional rights by failing to properly monitor, supervise and screen the activities of

employees, staff, corrections officers and/or others who had a duty to monitor inmates, including, but not limited to JUSTIN K. SMITH;

d.   Defendant, CHRISTOPHER ROARK violated JUSTIN K. SMITH'S constitutional rights by falsifying supervision time records and/or failing to supervise the employees, staff, corrections officers and/or others regarding the required documentation;

e.   Defendant, CHRISTOPHER ROARK's failure to protect JUSTIN K. SMITH was so grossly incompetent and inadequate as to shock the conscience or to be intolerable to fundamental fairness; and/or

f.   Defendant, CHRISTOPHER ROARK failed to act in the face of an unjustifiably high risk of physical injury, harm, suicide and/or death that was either known or so obvious that it should be known to him.

168.   Defendant, CHRISTOPHER ROARK knew of and disregarded an excessive risk to JUSTIN K. SMITH'S health or safety; CHRISTOPHER ROARK was both aware of facts from which there was an inference of an excessive risk to JUSTIN K. SMITH'S health or safety, and he also drew the inference.

169.   Defendant, CHRISTOPHER ROARK through his actions or inaction described above, caused JUSTIN K. SMITH to be subjected to the deprivation of rights, privileges, and immunities secured by the Constitution and the laws of the United States, including:

a.   The right to substantive and procedural due process protected by the Fourteenth Amendment.

b.   The right not to be subjected to cruel, unusual and excessive punishment as guaranteed to prisoners by the Eighth Amendment.

c.     The right not to be subjected to cruel, unusual and excessive punishment as guaranteed to pre-trial detainees by the Fourteenth Amendment.

d.     The right to personal safety and wellbeing and protection from physical injury as guaranteed to prisoners by the Eighth Amendment.

e.     The right to personal safety and wellbeing and protection from physical injury as guaranteed to pre-trial detainees by the Fourteenth Amendment.

170.    Defendant, CHRISTOPHER ROARK knew that inmates, including but not limited to JUSTIN K. SMITH, faced a substantial risk of serious physical injury, harm, suicide and/or death and disregarded that risk by failing to take reasonable measures to abate it.

171.    As a direct, proximate and foreseeable result of the Constitutional violations and misconduct of the Defendant, CHRISTOPHER ROARK, as set forth above, JUSTIN K. SMITH died.

172.    As a direct, proximate and foreseeable result of the Constitutional violations and misconduct of the Defendant, CHRISTOPHER ROARK, the PLAINTIFF hereby demands recovery of all authorized damages for the survivors and the estate, including but not limited to pain and suffering of the Decedent until his death, loss of enjoyment of life of the Decedent until his death, punitive damages, and:

a)     For the Estate, loss of earning of the deceased from the date of injury to the date of death, less lost support of survivors excluding contributions in kind, with interest;

b)     For the Estate, loss of prospective net accumulations which might reasonably have been expected but for the wrongful death, reduced to present money value;

c)     For the Estate, any medical or funeral expenses that have become a charge against the Estate or paid by or on behalf of the deceased;

d)   For the Decedent's survivors, the value of lost support and services from the date of death, with interest;

e)   For the Decedent's survivors, future loss of support and services from the date of death and reduced to present value;

f)   For the Decedent's survivors, children of the Decedent, lost parental companionship, instruction, and guidance; and

g)   For the Decedent's survivors, children of the Decedent, compensation for mental pain and suffering.

**WHEREFORE**, Plaintiff demands judgment against CHRISTOPHER ROARK for the damages outlined above, attorney's fees pursuant to 42 U.S.C. § 1988 and such other and further relief as this Court deems just and proper and demands a trial by jury of all claims.

**COUNT VI**
**DEPRIVATION OF RIGHTS PURSUANT TO**
**42 U.S.C. § 1983 AGAINST DEFENDANT OSCEOLA COUNTY**

Plaintiff re-alleges and incorporates by reference paragraphs one (1) through one-hundred ten (110) above as though fully set forth herein.

173.   This is an action for violation of Constitutional rights under 42 U.S.C. §1983, against Defendant, OSCEOLA, for failing to enact or in the alternative follow laws, and failing to enact or promulgate sufficient policies or procedures to insure against the deliberate indifference to JUSTIN K. SMITH'S safety and wellbeing knowing that a failure to do so could result in serious consequences, including the physical injury, harm, suicide and/or death of such inmates such as JUSTIN K. SMITH.

174.   Defendant, OSCEOLA recklessly or willfully, failed to take the precautions or provide supervision necessary in the exercise of reasonable care to prevent JUSTIN K. SMITH

from committing physical injury, harm, suicide and/or death when OSCEOLA knew or should have known that he was likely to commit physical injury, harm, suicide and/or death.

175.    Defendant, OSCEOLA, demonstrated reckless and/or deliberate indifference to JUSTIN K. SMITH'S fundamental and clearly established Constitutional rights and evidenced an intentional and conscious disregard and indifference to JUSTIN K. SMITH'S safety and welfare in their actions as follows:

a.    Failing to equip or establish the OCC in such a way that the staff of the facility would be capable of adequately intervening, supervising or managing the protection of inmates;

b.    Failing to adequately train its corrections officers, and its employees, agents or servants to adequately evaluate and protect an inmate at substantial risk of serious physical injury, harm, suicide and/or death to the inmate;

c.    Failure to adequately establish a policy or protocol by which inmates, such as Plaintiff could be adequately evaluated and protected from physical injury, harm, suicide and/or death.

176.    The conditions created by OSCEOLA are so extreme that it posed an unreasonable risk of serious physical injury, harm, suicide and/or death to inmates', including JUSTIN K. SMITH'S health or safety.

177.    Defendant, OSCEOLA, by and through its agents or employees, had a subjective knowledge of a risk of serious physical injury, harm, suicide and/or death and disregarded that risk by actions that were more than mere negligence.

178.    Defendant, OSCEOLA, by and through its agents or employees, was aware of a particularized threat or fear felt by JUSTIN K. SMITH, including, but not limited to suicidal

ideations and/or actions in preparation for physical injury, harm, suicide and/or death, and willfully ignored the threat or fear, which caused or contributed to the suicide and death of JUSTIN K. SMITH.

179. Alternatively, OSCEOLA employed a custom of violating its own policies and procedures which resulted in deliberate indifference to JUSTIN K. SMITH'S safety and wellbeing.

180. Defendant, OSCEOLA, had actual notice of JUSTIN K. SMITH'S need for supervision. OSCEOLA had a subjective knowledge of a risk of serious harm and disregarded that risk by conduct that was more than mere negligence. Therefore, Defendant, OSCEOLA, was deliberately indifferent to JUSTIN K. SMITH'S safety and wellbeing. Some or all of the Constitutional violations and intentional misconduct of Defendant ultimately resulted in the suicide of JUSTIN K. SMITH.

181. JUSTIN K. SMITH'S physical injury, harm, suicide and/or death was a reasonably foreseeable result and consequence of the practice of ignoring existing policies and procedures and/or failing to enact sufficient policies and procedures by OSCEOLA resulting in the deliberate indifference to JUSTIN K. SMITH'S safety and wellbeing and/or cruel and unusual punishment of JUSTIN K. SMITH.

182. OSCEOLA has failed to adopt a written policy, procedure, practice, administrative, general or special order which adequately requires appropriate supervision of pre-trial detainees and/or inmates at risk for physical injury, harm, suicide and/or death.

183. OSCEOLA has adopted policies or practices of failing to train employees to identify, monitor or otherwise treat pre-trial detainees and/or prisoners who are a known risk of physical injury, harm, suicide and/or death which cause or contribute to a failure to adequately supervise inmates at risk of suicide.

184.     OSCEOLA has adopted policies or practices of failing to discipline employees if they fail to identify, monitor or otherwise treat pre-trial detainees and/or prisoners who are at risk for physical injury, harm, suicide and/or death.

185.     OSCEOLA has adopted policies or practices of failing to provide safe housing for suicidal pre-trial detainees and/or prisoners who are at risk for physical injury, harm, suicide and/or death.

186.     By failing to adopt or implement a written policy, procedure, practice, administrative, general or special order, and/or adopting policies or practices which cause or contribute to a failure to adequately supervise inmates at risk of physical injury, harm, suicide and/or death, Defendant, OSCEOLA, has been deliberately indifferent to the constitutional rights of inmates.

187.     OSCEOLA has ratified the actions of employees, including, but not limited to Officer MICHAEL NEGRON, JR., Officer ARNALDO TORRES-VARGAS, Officer ERICK VEGA and Sergeant CHRISTOPHER ROARK, in failing to adequately supervise inmates by persistently failing to take sufficient disciplinary action to correct the behavior.

188.     Defendant, OSCEOLA, through the actions described above, caused JUSTIN K. SMITH to be subjected to the deprivation of rights, privileges and immunities secured by the Constitution and the laws of the United States, including:

a.     The right to substantive and procedural due process protected by the Fourteenth Amendment.

b.     The right to equal protection as guaranteed by the Fourteenth Amendments.

c.     The right not to be subjected to cruel, unusual and excessive punishment as guaranteed to pre-trial detainees by the Fourteenth Amendment.

d. The right not to be subjected to cruel, unusual and excessive punishment as guaranteed to prisoners by the Eighth Amendment.

e. The right to personal safety and wellbeing and protection from physical injury as guaranteed to pre-trial detainees by the Fourteenth Amendment.

f. The right to personal safety and wellbeing and protection from physical injury as guaranteed to prisoners by the Eighth Amendment.

189. As a direct and proximate result of the constitutional violations by OSCEOLA, JUSTIN K. SMITH died.

190. As a direct, proximate and foreseeable result of the Constitutional violations and misconduct of the Defendant, OSCEOLA, the PLAINTIFF hereby demands recovery of all authorized damages for the survivors and the estate, including but not limited to pain and suffering of the Decedent until his death, loss of enjoyment of life of the Decedent until his death, punitive damages, and:

a) For the Estate, loss of earning of the deceased from the date of injury to the date of death, less lost support of survivors excluding contributions in kind, with interest;

b) For the Estate, loss of prospective net accumulations which might reasonably have been expected but for the wrongful death, reduced to present money value;

c) For the Estate, any medical or funeral expenses that have become a charge against the Estate or paid by or on behalf of the deceased;

d) For the Decedent's survivors, the value of lost support and services from the date of death, with interest;

e) For the Decedent's survivors, future loss of support and services from the date of death and reduced to present value;

f) For the Decedent's survivors, children of the Decedent, lost parental companionship, instruction, and guidance; and

g) For the Decedent's survivors, children of the Decedent, compensation for mental pain and suffering.

**WHEREFORE**, Plaintiff demands judgment against the Defendant, OSCEOLA, for the damages outlined above, attorney's fees pursuant to 42 U.S.C. § 1988 and such other and further relief as this Court deems just and proper and demands a trial by jury of all claims.

## DEMAND FOR JURY TRIAL

191. Plaintiff, WILLIAM T. SMITH, as Personal Representative of the Estate of JUSTIN K. SMITH, hereby demands a trial by jury of all those issues triable as a matter of right.

## PRAYER FOR RELIEF

**WHEREFORE**, WILLIAM T. SMITH, as Personal Representative of the Estate of JUSTIN K. SMITH, respectfully prays that:

a. The Court enter judgment in favor of WILLIAM T. SMITH, as Personal Representative of the Estate of JUSTIN K. SMITH, on the claim(s) in an amount to be proved at trial;

b. WILLIAM T. SMITH, as Personal Representative of the Estate of JUSTIN K. SMITH, recover from Defendants its costs and expenses, including reasonable attorneys' fees incurred in pursuing this claim pursuant to 42 U.S.C. § 1988;

c. The estate of JUSTIN K. SMITH, recover damages including any and all incurred medical expenses, funeral and/or burial expenses as authorized by Florida's Wrongful Death Act, *Florida Statutes §§768 et seq.*;

d.   The estate of JUSTIN K. SMITH recovers damages including any and all medical expenses, funeral and burial expenses, pain and suffering until his death, loss of enjoyment of life until his death, and punitive damages, pursuant to 42 U.S.C. § 1983;

e.   The survivor(s) recover damages including past pain and suffering, future pain and suffering, and all other damages recoverable by survivors pursuant to Florida's Wrongful Death Act, *Florida Statutes §§768 et seq.*

f.   This case be tried by a jury; and

g.   WILLIAM T. SMITH, as Personal Representative of the Estate of JUSTIN K. SMITH, recovers such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

The Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted this 12th day of July, 2024.

/s/ Jeremy Markman
JEREMY K, MARKMAN, ESQ.
Fla. Bar. No.:  0080594
markman@kingmarkman.com
King & Markman, P.A.
941 Lake Baldwin Lane, Suite 101
Orlando, Florida 32814
Tel:   (407) 447-0848
Fax:   (407) 271-8999
jgalvan@kingmarkman.com
tnunez@kingmarkman.com
*Attorneys for the Plaintiff*

IN THE CIRCUIT COURT FOR OSCEOLA COUNTY,
FLORIDA
IN RE: ESTATE OF

PROBATE DIVISION

File No. 2023-CP-000094 PR

JUSTIN KEITH SMITH

Division  Probate

Deceased.

## ORDER APPOINTING PERSONAL REPRESENTATIVE
### (intestate -- single)

On the petition of William T. Smith for administration of the estate of Justin Keith Smith, deceased, the court finding that the decedent died on October 12, 1987, and that William T. Smith is entitled to appointment as personal representative by reason of he has the consent of the majority of the beneficiaries to act as such, and is qualified to be personal representative, it is

ADJUDGED that William T. Smith is appointed personal representative of the estate of the decedent, and that upon taking the prescribed oath, filing designation and acceptance of resident agent, and filing bond in the sum of $0.00, letters of administration shall be issued.

ORDERED

eSigned by ALVARO, CHAD in 2023 CP 000094 PR
on 03/22/2023 14:13:38 WgRfTW0E

Circuit Judge

Copy furnished to:
Catherine E. Davey, Esq.
Email:  cdavey@daveylg.com
Secondary email:  steve@daveylg.com

EXHIBIT

A



# KING&MARKMAN

A PROFESSIONAL ASSOCIATION



October 26, 2022

*SENT VIA U.S. CERTIFIED MAIL (7020 0090 0000 0031 7715)*
*RETURN RECEIPT REQUESTED*
*Via Facsimile @ (407) 742-2217*
Osceola County
Attn: Frank M. Townsend
1 Courthouse Square
Suite 4700
Kissimmee, Florida 34741-5488

*SENT VIA U.S. CERTIFIED MAIL (7020 0090 0000 0031 7722)*
*RETURN RECEIPT REQUESTED*
Osceola County Corrections
402 Simpson Road
Kissimmee, Florida 34744

**Notice of Intent to Initiate Litigation pursuant to Florida Statute § 768.28**
**and**
**Demand for Written Disclosure of Liability Insurance**

Re:     *Notice of Intent to Initiate Claim on Behalf of the*
        *Estate of JUSTIN KEITH SMITH.*
        *Name:           Justin Keith Smith*
        *Date of Birth:     September 1, 1987*
        *Place of Birth:    Grandview, Missouri*

        *Incident Location:   Osceola County Corrections, 402 Simpson Road*
        *Date of Incident:    October 8, 2022*
        *Date of Death:      October 12, 2022*

To Whom It May Concern:

Please allow this letter to serve as a Notice of Intent to initiate a claim against Osceola County, it's employees, agents and those in privity pursuant to Florida Statute § 768.28 for the negligent

Additionally, we contend that there also exists a basis for individual liability on the part of personnel of Osceola County Corrections, pursuant to 42 U.S.C. § 1983, which allows for the imposition of punitive damages. It is our intent to initiate litigation against you and your personnel following the six-month waiting period provided for in Florida Statute § 768.28(6)(a), or sooner if this claim is denied in writing before that time.

Sincerely,

Jeremy K. Markman

cc:    Joseph D. Tessitore, Esquire, Bell & Roper, P.A.
       *SENT VIA U.S. CERTIFIED MAIL (7020 0090 0000 0031 7739)*
       *RETURN RECEIPT REQUESTED*

       Florida Department of Financial Services
       *SENT VIA U.S. CERTIFIED MAIL (7020 0090 0000 0031 7746)*
       *RETURN RECEIPT REQUESTED*

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Osceola County
Attn: Frank M. Townsend
1 Courthouse Square
Suite 4760
Kissimmee, Florida 34741-5469

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
9590 9402 7798 21152 3448 15

2. Article Number (Transfer from service label)
7020 0090 0000 0031 7715

PS Form 3811, July 2020 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                                    ☐ Agent
                                     ☐ Addressee

B. Received by (Printed Name)        C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:         ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Signature Confirmation Restricted Delivery
☐ Mail
☐ Mail Restricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

7020 0090 0000 0031 7715

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

Certified Mail Fee
$

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)        $
☐ Return Receipt (electronic)      $
☐ Certified Mail Restricted Delivery  $
☐ Adult Signature Required         $
☐ Adult Signature Restricted Delivery  $

Postage
$

Total Postage and Fees
$

Sent To    Osceola County Attn: Frank M. Townsend

Street and Apt. No., or PO Box No.
1 Courthouse Square Suite 4760

City, State, ZIP+4®
Kissimmee, Florida 34741-5469

PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions

Postmark
Here

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Osceola County Corrections
402 Simpson Road
Kissimmee Florida 34744

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖

9590 9402 7160 1251 2384 93

2. Article Number (Transfer from service label)

7020 0090 0000 0031 7722

PS Form 3811, July 2020 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent
                           ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery
      ($500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

7020 0090 0000 0031 7722

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

Certified Mail Fee
$

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)        $
☐ Return Receipt (electronic)      $
☐ Certified Mail Restricted Delivery  $
☐ Adult Signature Required         $
☐ Adult Signature Restricted Delivery $

Postage
$

Total Postage and Fees
$

Postmark
Here

Sent To  Osceola County Corrections
Street and Apt. No., or PO Box No.  402 Simpson Road
City, State, ZIP+4®  Kissimmee, Florida 34744

PS Form 3800, April 2015 PSN 7530-02-000-9047        See Reverse for Instructions

## USPS Certified Mail Receipt / Return Receipt

SENDER: COMPLETE THIS SECTION
■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

JOSEPH B. TESSITORE, ESQ
BELL & ROPER P.A.
2707 EAST JEFFERSON STREET
ORLANDO FLORIDA 32803

9590 9402 7798 21152 3447 92

2. Article Number (transfer from service label)
7020 0090 0000 0031 7739

PS Form 3811, July 2020 PSN 7530-02-000-9053

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X _____  □ Agent  ☑ Addressee

B. Received by (Printed Name)   C. Date of Delivery
Bill Dill                        10/27/22

D. Is delivery address different from item 1?  □ Yes
   If YES, enter delivery address below:       □ No

3. Service Type
□ Adult Signature
□ Adult Signature Restricted Delivery
☑ Certified Mail®
□ Certified Mail Restricted Delivery
□ Collect on Delivery
□ Collect on Delivery Restricted Delivery
□ Insured Mail
□ Insured Mail Restricted Delivery ($500)
□ Priority Mail Express®
□ Registered Mail™
□ Registered Mail Restricted Delivery
□ Signature Confirmation™
□ Signature Confirmation Restricted Delivery

Domestic Return Receipt

---

7020 0090 0000 0031 7739

U.S. Postal Service™
CERTIFIED MAIL® RECEIPT
Domestic Mail Only
For delivery information, visit our website at www.usps.com®.

Certified Mail Fee
$

Extra Services & Fees (check box, add fee as appropriate)
□ Return Receipt (hardcopy)        $
□ Return Receipt (electronic)      $
□ Certified Mail Restricted Delivery $
□ Adult Signature Required         $
□ Adult Signature Restricted Delivery $

Postage
$

Total Postage and Fees
$

Postmark
Here

Sent To   Joseph B. ROPER, TESSITORE, ESQ
Street and Apt. No., or PO Box No.   BELL & ROPER P.A. 2707 EAST JEFFERSON STREET
City, State, ZIP+4®   ORLANDO FLORIDA 32803

PS Form 3800, April 2015 PSN 7530-02-000-9047   See Reverse for Instructions